S16A0797. BULLARD v. THE STATE.
(791 SE2d 808)

THOMPSON, Chief Justice.

Appellant Tommie Lee Bullard challenges his convictions for malice murder and other crimes related to the stabbing death of the victim, Willie White.[1] On appeal, appellant contends that the State violated his right to remain silent and that the trial court erred in failing to grant his motion for a mistrial that was based on that violation. We find no error and affirm.

1. Viewed in the light most favorable to the verdict, the evidence at trial showed that on February 17, 2011, while performing a welfare check, a police officer found the body of the victim in a recliner inside his home. The medical examiner determined the victim died from being stabbed 14 times in the chest and abdomen. At the scene, the police found the victim's cell phone, which showed he had last spoken on it at 8:13 p.m. on February 16, 2011.

The victim sold alcohol from his apartment and had sold some to appellant on credit. During the week of the victim's death, appellant became angry when he was told that the victim wanted his money. Payton Grant testified that sometime around 7:00 p.m. to 8:00 p.m. on February 16, she went to appellant's apartment to have sex. Appellant was wearing a red shirt when she arrived. They had sex, and she left and went home. Appellant, who lived close to the victim,

---

[1] The crime occurred between February 16 and February 17, 2011. Appellant was indicted by a Miller County grand jury on May 13, 2011, on charges of malice murder, felony murder (predicated on aggravated assault, armed robbery, and burglary), aggravated assault, armed robbery, and burglary. On August 15, 2012, appellant was found guilty on all counts. On September 4, 2012, appellant was sentenced to two consecutive life sentences for malice murder and armed robbery and to 20 consecutive years for burglary. The three felony murder verdicts were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 371-372 (434 SE2d 479) (1993), and the aggravated assault verdict merged with malice murder. Appellant filed a motion for new trial on September 4, 2012, which he amended on September 8, 2014, and on July 13, 2015. Following a hearing, the trial court denied the motion for a new trial on November 3, 2015. Appellant filed premature notices of appeal on October 27 and 29, 2015. See *Rodriguez-Nova v. State*, 295 Ga. 868, 868, n. 1 (763 SE2d 698) (2014) (explaining that "a premature notice of appeal is treated as effectively filed upon entry of the order denying the motion for new trial"). The appeal was docketed in this Court for the April 2016 term and submitted for a decision on the briefs.

was seen walking toward the victim's apartment sometime before 7:30 p.m. on February 16 and then back toward his own house about 9:00 to 10:00 p.m. on February 16. About 9:30 that night, appellant called Ezra Merritt and asked him to walk with Alice Mae Benton, a friend of appellant who is blind, to appellant's house. Merritt and Benton walked to appellant's house about 9:45 p.m. Merritt testified that when they arrived, appellant was not wearing a shirt and paid Merritt $20 for walking with Benton for three blocks. Merritt also saw another $20 on appellant's bed. Benton smoked cocaine with appellant until about 6:00 a.m. She added that, about 4:30 a.m., she and appellant went to various places trying to buy more cocaine and that appellant eventually called someone who sold him cocaine for $80. Benton also testified that the victim sold London Dry Gin and Colt 45 malt liquor from his apartment and that she drank both at appellant's house that night. One of appellant's neighbors testified that it was common for appellant not to have any money in the middle of the month and that appellant told him that he was broke.

On February 18, 2011, GBI Agent Mike Walsingham and Colquitt Police Department Investigator Rick Morgan asked appellant to come to the police station and speak with them. Appellant agreed and was driven to the station. At the station, appellant was informed of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). He was also told that he was not in custody and could leave anytime he wished. Appellant agreed to speak with Walsingham and Morgan. During the interview, they became suspicious when appellant contradicted himself several times. Thereafter, Walsingham and Morgan asked to search appellant's home, and he consented.

Walsingham, Morgan, and appellant went to appellant's house from the police station. During the search, the officers found a red shirt, which appeared to have blood stains on it. Testing confirmed that the shirt was stained with the victim's blood. Payton Grant testified that the red shirt looked like the shirt appellant was wearing when she saw him on the night of February 16. The agents also found a knife on appellant's headboard, but no blood was found on it. On February 22, 2011, the agents went through appellant's garbage and found the victim's driver's license, a London Dry Gin bottle, and a Colt 45 can. That same day, agents arrested appellant and collected his DNA through a buccal swab. Appellant's DNA matched contact DNA found on the victim's pants.

Although appellant does not dispute that the evidence is sufficient to sustain his convictions, we have independently reviewed the record, and we conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to find beyond a

reasonable doubt that appellant was guilty of murder and the other crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that his right to remain silent was violated by a colloquy between the prosecutor and Investigator Morgan. At trial, Investigator Morgan testified that, when he found the red shirt that appeared to have blood on it during the search of appellant's home, he asked appellant what the substance was and appellant said that it was grease. The prosecutor then asked the investigator whether appellant ever said (1) that it was not his shirt, (2) that he did not know how the substance got there, or (3) that somebody else must have put it there. The investigator answered "no" to all three questions. After the last question, appellant objected on the ground that the questions and answers violated his right to remain silent. The trial court overruled the objection, and appellant now contends that the trial court erred in doing so. Assuming that appellant properly preserved the issue for appeal by not objecting until the third question was asked,[2] we find no error in the trial court's ruling.

Because appellant's defense was that Payton Grant killed the victim after having sex with appellant and later planted the bloody shirt in appellant's home and the victim's driver's license in his garbage, it was not improper for the prosecutor to question Investigator Morgan regarding the failure of appellant, who agreed to and did speak with the police, to mention that the red shirt was not his and that someone else put it in his home with the blood on it. See *Seabolt v. Norris*, 298 Ga. 583, 587 (783 SE2d 913) (2016) (holding that it did not violate the defendant's right to remain silent when the prosecutor questioned her about inconsistencies between her pre-trial statements to authorities and her defense at trial); *Johnson v. State*, 292 Ga. 785, 788 (741 SE2d 627) (2013) (same). See also *State v. Sims*, 296 Ga. 465, 469 (769 SE2d 62) (2015) (explaining that the "bright line rule" of *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), which forbids the State from commenting on a defendant's right to remain silent, is not violated where the comments are "limited to noting inconsistencies in [the defendant's] pre-trial statements to authorities").[3]

*Judgment affirmed. All the Justices concur.*

---

[2] See *Johnson v. State*, 292 Ga. 785, 787-788 (741 SE2d 627) (2013) (where the defendant contended on appeal that several questions on cross-examination violated his right to remain silent, we held that, because he did not object to the cross-examination until two questions later, he did not make a timely objection and waived appellate review of the issue).

[3] The rule of *Mallory* is based on former OCGA § 24-3-36, which was repealed by our new Evidence Code. However, because appellant was tried before the effective date of our new

DECIDED OCTOBER 3, 2016.

*The Smith Group, Gregory D. Smith*, for appellant.

*T. Craig Earnest, District Attorney, Ronald S. Smith, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General*, for appellee.

---

Evidence Code, *Mallory* was applicable to appellant's trial. This Court has "express[ed] no opinion about the continuing validity of *Mallory* under the new Evidence Code." *Sims*, 296 Ga. at 471 (citation omitted).